UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARILYN HOUSTON,

        Plaintiff,

v.                                                                                          Case No. 10-13780
                                                                                            Honorable Patrick J. Duggan
U.S. BANK HOME MORTGAGE
WISCONSIN SERVICING, a wholly
owned subsidiary of U.S. Bank, N.A.,

        Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on May 2, 2011.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                   U.S. DISTRICT COURT JUDGE

This action, which was removed from the Wayne County Circuit Court on September 22, 2010, arises from the foreclosure of real estate in the City of Detroit, owned by Plaintiff Marilyn Houston ("Plaintiff"). In a Complaint filed August 16, 2010, Plaintiff alleges that Defendant– improperly designated as U.S. Bank Home Mortgage Wisconsin Servicing ("U.S. Bank")– violated federal and state law when it claimed an incorrect arrearage and balance on a mortgage loan U.S. Bank serviced. Specifically, Plaintiff alleges the following claims against U.S. Bank: (I) misrepresentation; (II) violation of the federal Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601-2617;

(III) violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p; (IV) violation of the federal Home Affordable Modification Program and the Emergency Economic Stabilization Act of 2008, 12 U.S.C. §§ 5201-5241; (V) wrongful foreclosure; and (VI) intentional infliction of emotional distress.

Presently before the Court is U.S. Bank's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed on September 29, 2010. Plaintiff filed a response to the motion on October 15, 2010; U.S. Bank filed a reply brief on October 22, 2010. This Court held hearings with respect to the motion on November 18, 2010, and January 13, and April 27, 2011. For the reasons that follow, the Court grants in part and denies in part U.S. Bank's motion to dismiss.

**I.      Standard for Motion to Dismiss**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1964-65, 1974 (2007). A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, – U.S. – , 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at

557, 127 S. Ct at 1966).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts "to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id*.; *see also Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965-65).

**II.    Factual Background**

The following facts are taken from Plaintiff's Complaint and documents in a Chapter 13 bankruptcy filed by Plaintiff, *In re Houston*, No. 03-70761 (Bankr. E.D. Mich. Sept. 4, 2009).

In August 2001, Plaintiff obtained a loan from Flagstar Bank, FSB in the amount

of $63,900 to purchase real property located at 8740 Westfield in Detroit, Michigan ("the property"). The loan was secured by a HUD/FHA insured mortgage on the property. In August 2001, the mortgage was assigned to the Michigan State Housing Development Authority ("MSHDA").

On November 5, 2003, Plaintiff filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the Eastern District of Michigan. On March 3, 2004, the Bankruptcy Court confirmed the Chapter 13 plan. On October 11, 2007, during the execution of the plan, U.S. Bank notified Plaintiff that servicing of her loan had been transferred from Heartwell Mortgage Corporation to U.S. Bank.

On May 27, 2009, the Chapter 13 Trustee filed a "Notice of Completion of Plan Payment; and Notice to Creditors of Right to Object." (Def.'s Mot. Ex. G.) The notice indicates that Plaintiff made all payments to the Trustee as required by the confirmed Chapter 13 Plan and, as to "any secured claim that continues beyond the term of the plan," that "any pre-petition or post-petition defaults have been cured and the claim is in all respects current, with no escrow balance, late charges, costs or attorney fees owing." (*Id.*) With respect to secured debt obligations, the notice advises the debtor:

1. Immediately begin making the required payments on secured debt obligations to avoid defaulting on those secured debt obligations.

2. Continue to make required payments on secured debt obligations until those obligations are paid in full. If the Court determines that the Debtor is eligible for a Discharge, the Chapter 13 Discharge will not discharge the Debtor from any obligation on any continuing secured debt payments that come due after the date of the Debtor last payment under the plan.

4

(*Id.*)  In a section entitled "Rights and Duties of Creditors," the notice requires the filing of an objection within thirty days by "any party in interest that asserts that . . . [w]ith respect to any secured claim that continues beyond the term of the plan, there remains pre-petition or post-petition defaults that have not been cured or that the claim is otherwise not current in all respects including, but not limited to, any unpaid escrow balance, late charge, cost or attorney fee . . ."  (*Id.*)

On July 7, 2009, the Bankruptcy Court entered an Order of Discharge in Plaintiff's bankruptcy case.  (Compl. Ex. 6.)  On July 31, 2009, the Trustee filed her "Final Report and Account" in the bankruptcy proceedings.  (Compl. Ex. 4.)

Plaintiff received a statement from U.S. Bank dated July 17, 2009, indicating that she owed $2,226.27 in past due amount(s) and $15.74 in late charges in addition to her monthly payment of $742.09.  (Compl. Ex. 7.)  In response, Plaintiff telephoned U.S. Bank to inquire about the alleged arrearage and the amount of the principal balance.  (Compl. ¶ 11.)  According to Plaintiff, U.S. Bank did not address the payment amount in dispute and insisted that Plaintiff owed the alleged amount.  (*Id.*)

On August 19, 2009, Plaintiff sent a letter to U.S. Bank via certified mail regarding her loan.  Plaintiff identifies herself and her loan number at the top of the letter and then writes:

> US Bank Home Mortgage is the servicer of my mortgage loan at the above address.  I dispute the amount that is owed according to the Monthly Billing Statement and request that you send me information about the fees, costs and escrow accounting on my loan.  This is a "qualified written request" pursuant to the Real Estate Settlement and Procedures Act (section

5

2605(e)).

(Compl. Ex. 8.) In her letter, Plaintiff then requests "an itemization" of several things including her payment history, the amount of claimed arrears or delinquencies, and a copy of all bankruptcy payments and how the payments were applied to her account. (*Id.*)

Plaintiff claims that U.S. Bank never responded to her inquiry. Instead, foreclosure proceedings were instituted with a Sheriff's Sale set for August 18, 2010. (Compl. ¶ 13, Ex. 9.) Two days before the scheduled Sheriff's Sale, Plaintiff initiated this action.

## III.    Applicable Law and Analysis

### A.    Real Estate Settlement Procedures Act ("RESPA")

Plaintiff alleges that U.S. Bank violated RESPA, specifically 12 U.S.C. § 2605(e), by failing to respond to her August 19, 2009 letter. Section 2605(e) imposes the following duties on a loan servicer:

> (1)(A) If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
> . . .
> (2) Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--

6

> (A) make appropriate corrections in the account of the
> borrower, including the crediting of any late charges or
> penalties, and transmit to the borrower a written notification
> of such correction (which shall include the name and
> telephone number of a representative of the servicer who can
> provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower
> with a written explanation or clarification that includes--
> (I) to the extent applicable, a statement of the reasons for
> which the servicer believes the account of the borrower is
> correct as determined by the servicer; and
> (ii) the name and telephone number of an individual employed
> by, or the office or department of, the servicer who can
> provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower
> with a written explanation or clarification that includes--
> (I) information requested by the borrower or an explanation of
> why the information requested is unavailable or cannot be
> obtained by the servicer; and
> (ii) the name and telephone number of an individual employed
> by, or the office or department of, the servicer who can
> provide assistance to the borrower.

12 U.S.C. § 2605(e).  The statute defines a "qualified written request" as:

> a written correspondence . . . that– (I) includes, or otherwise enables the
> servicer to identify, the name and account of the borrower; and (ii) includes
> a statement of the reasons for the belief of the borrower, to the extent
> applicable, that the account is in error or provides sufficient detail to the
> servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

U.S. Bank argues that Plaintiff fails to state a claim upon which relief may be granted under § 2605(e) because her August 19, 2009 letter to U.S. Bank does not qualify as a qualified written request ("QWR") as defined in the statute and she does not allege

how the failure to respond to the QWR proximately caused her actual damages. The Court does not agree.

As set forth above, Plaintiff's August 19 letter to U.S. Bank qualifies as a QWR if it "(I) includes or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error *or* provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B) (emphasis added). U.S. Bank does not argue that the first requirement is not satisfied and clearly Plaintiff's letter identifies her name and the loan number.

As to the second requirement, U.S. Bank is correct that Plaintiff does not state in her letter a reason for why she "dispute[s] the amount that is owed according to the Monthly Billing Statement." Nevertheless, it is sufficient if the letter alternatively "provides sufficient detail to the servicer regarding other information sought by the borrower." *Id.* Unlike the cases cited by U.S. Bank, Plaintiff does not simply request a list of documents relating to her loan. *See Gates v. Wachovia Mortgage, FSB*, No. 2:09-cv-02464, 2010 WL 2606511, at *3 (E.D. Cal. June 28, 2010) (unpublished opinion) (finding that the plaintiff's purported QWR "contain[ed] no statement of [the] plaintiff's belief as to the existence of a servicing error" and was "primarily aimed at uncovering documents relating to the ownership of the obligation, as well as seeking rescission or modification by calling into question the validity of the loan"); *Phillips v. Bank of Am. Corp.*, No. C 10-0400 JF, 2010 WL 1460824, at *4 (N.D. Cal. Apr. 9, 2010) (unpublished

opinion) (finding that the plaintiff's fax to the defendant did not qualify as a QWR where it only related to the origination documents and a proposed modification of the loan, not servicing). In her letter, Plaintiff specifically disputes the amount U.S. Bank, as servicer, indicates is owed in its billing statement and specific documentation relevant to determining how that amount was calculated. Construed in a light most favorable to Plaintiff, Exhibit 8 to her Complaint is a QWR. *See In re Thorian*, 387 B.R. 50, 70 (D. Idaho 2008) (interpreting the terms "inquiry" and "request" as used in RESPA to mean "a request for information" and "the act or instance of asking for something," respectively, and concluding that a QWR must "allege an account error or seek some information from the servicer.)

Plaintiff also alleges– or at least provides statements in her response brief indicating that she could allege– actual damages as a result of U.S. Bank's failure to comply with RESPA, sufficient to survive U.S. Bank's motion to dismiss. *See* 12 U.S.C. § 2605(f)(1). In her Complaint, Plaintiff alleges that as a result of U.S. Bank's "fail[ure] to respond to Plaintiff's inquiry and make the necessary corrections to [her] mortgage . . . Plaintiff has been subjected to illegal foreclosure based on an erroneous debt, . . ." (Compl. ¶ 29.) Plaintiff states in her response brief: "Plaintiff's payment was increased from $742.09 to $2,999.84, making it impossible to make the payment due to Defendants [sic] error and catalyzing the default . . ." (Pl.'s Resp. at 10.)

For the above reasons, the Court finds that Plaintiff states a claim for relief under RESPA on which relief may be granted (Count II).

### B. Fair Debt Collection Practices Act ("FDCPA")

Plaintiff alleges in her Complaint that U.S. Bank was a debt collector within the meaning of the FDCPA, sent Plaintiff correspondence stating an incorrect amount owed by Plaintiff, and failed to provide proper verification and correct the amount due. (Compl ¶¶ 31-33.) U.S. Bank contends that Plaintiff's claim under the FDCPA fails because the Bankruptcy Code provides the exclusive remedy for alleged violations of a discharge injunction and, alternatively, because she fails to allege that the debt already was in default when U.S. Bank began servicing the loan.

According to U.S. Bank, "[t]he essence of Plaintiff's FDCPA claim is that U.S. Bank impermissibly attempted to collect a debt that was allegedly satisfied in the bankruptcy proceedings in violation of the Bankruptcy Court's discharge injunction." (Def.'s Br. in Supp. of Mot. at 7.) The remedies for such a violation, U.S. Bank argues, must be pursued in the bankruptcy court pursuant to the Bankruptcy Code. Therefore, as U.S. Bank further argues and several courts have held, a plaintiff cannot "bring an 'end-around' the Bankruptcy Code through an FDCPA claim." (*Id*.) In other words, the availability of a remedy through the Bankruptcy Code precludes a cause of action under the FDCPA. (*Id*. at 7-8, citing cases.)

There in fact is a circuit split on the issue of whether the Bankruptcy Code precludes FDCPA claims. As U.S. Bank's motion reflects, the Ninth Circuit has held that it does. *See Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 510 (9th Cir. 2002). The Seventh Circuit, however, has held that the Bankruptcy Code does not preclude or

10

impliedly repeal the FDCPA. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730-32 (7th Cir. 2004). The Sixth Circuit has not decided the issue. This Court finds it unnecessary to resolve the issue, however, because, as U.S. Bank alternatively argues, Plaintiff fails to allege that the mortgage loan was in default when U.S. Bank acquired it.

Under the FDCPA, an individual's "creditors" are not subject to liability unless a debt was already "in default" at the time of its acquisition. 15 U.S.C. § 1692a(6(F)(iii); *see also Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 107 (6th Cir. 1996) (holding that creditors are not "debt collectors" under the FDCPA if the debt was not "in default" at the time of the assumption of a loan origination). According to documents filed in the bankruptcy proceeding, servicing of Plaintiff's loan was transferred to U.S. Bank effective August 1, 2007. (Def.'s Mot. Ex. B.) Plaintiff had not defaulted on the loan by this time. For this reason, Plaintiff fails to state a FDCPA claim against U.S. Bank on which relief may be granted (Count III).

   **C.**  **Home Affordable Modification Program ("HAMP") and the Emergency Economic Stabilization Act of 2008 ("EESA")**

In Count IV of her Complaint, Plaintiff alleges that U.S. Bank has a duty to provide loan modifications pursuant to HAMP, that she met the criteria for modification under HAMP, and that U.S. Bank violated its duty by refusing to modify her loan. (Compl. ¶¶ 37-40.) As this Court has previously held, however, neither HAMP nor EESA create a private right of action under which Plaintiff may seek relief. *Hart v. Countrywide Home Loans, Inc.*, – F. Supp. 2d – , 2010 WL 3272623, at *5 (E.D. Mich.

Aug. 19, 2010) (citing cases). Furthermore the statutes do not compel a servicer to modify a loan: "While the Secretary must *encourage* mortgage servicers to modify loans, the statute does not *require* Defendant or other mortgage servicers to modify loans." *Id*.

For this reason, Plaintiff fails to state a claim under HAMP or EESA (Count IV) on which relief may be granted.

### D. Misrepresentation (Count I)

Plaintiff alleges that U.S. Bank made material misrepresentations regarding her loan, including representing an arrearage without any basis for the arrearage and advising her that the mortgage was subject to default and foreclosure when it "had a duty to comply with FHA loss mitigation alternatives including the FHA-HAMP modification." (Compl. ¶ 20.) Under Michigan law, a claim for misrepresentation requires proof of the following:

> (1) That [the] defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with intention that it should be acted upon by [the] plaintiff; (5) that [the] plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Hart*, 2010 WL 3272623, at *6 (quoting *U.S. Fidelity and Guaranty Co. v. Black*, 412 Mich. 99, 114, 313 N.W.2d 77, 82 (1981) (additional citation omitted)). With respect to Plaintiff's claim that U.S. Bank made false representations regarding the outstanding balance of her loan and the amount the loan was in arrears, U.S. Bank argues that Plaintiff cannot establish the necessary elements of her misrepresentation claim because (1) there

were no "false" representations and (2) she admits that she knew the alleged statements by U.S. Bank were false when she received them. As to Plaintiff's claim that U.S. Bank made false representations regarding its modification of her loan, U.S. Bank argues that there is no claim for duty owed or the servicer's failure to modify a loan.

As this Court held in *Hart*, a plaintiff cannot state a misrepresentation claim based on allegations that the defendant promised but failed to modify the plaintiff's loan. 2010 WL 3272623, at *6. "[R]eliance on a promise that [the servicer] would review [the] Plaintiff's mortgage for modification could not cause an injury . . . where, as discussed in detail above, [the] Plaintiff is not entitled modification regardless of her eligibility under [HAMP and EESA]." *Id*.

With respect to U.S. Bank's allege misrepresentations regarding Plaintiff's loan balance and arrears, U.S. Bank contends that its statement– as reflected on the July 2009 Monthly Mortgage Statement sent to Plaintiff– accurately reflected arrears arising from Plaintiff's failure to remit loan payments after the Trustee turned the responsibility for the payments over to her. (Def.'s Br. in Supp. of Mot. at 3.) First, the statement does not identify how the arrearage was calculated, in other words what specific earlier payments were not made. (Compl. Ex. 7.) Second, viewing Plaintiff's Complaint in the light most favorable to her, the Court cannot conclude, as U.S. Bank asserts, that the overdue amounts stated on the statement were correct. Plaintiff appears to allege in her Complaint that the loan should have been paid off completely through the bankruptcy plan or at least paid up-to-date when she was discharged from bankruptcy (the same time when the

13

statement was sent to her showing an arrearage).

For the same reasons, the Court cannot conclude that Plaintiff knew the statements were false when she received U.S. Bank's Monthly Mortgage Statement. Additionally, while Plaintiff alleges in her Complaint that she sent a letter to U.S. Bank stating that the debt amount and status of her account as represented on the statement were incorrect (Compl. ¶ 32), she also alleges that she "to date has no knowledge of the accuracy of any alleged debt and arrearages." (*Id.* ¶ 14.) It is clear from her Complaint that Plaintiff doubted the accuracy of U.S. Bank's representations; however, she had no means to verify the statements when U.S. Bank failed to respond to her request for documentation supporting them.

The Michigan courts have indicated that "someone who knows that a representation is false cannot rely on that representation. Such knowledge prevents not only reasonable reliance, it prevents any reliance at all." (Def.'s Br. in Supp. of Mot. at 11 (quoting *Phinney v. Verbrugge*, 222 Mich. App. 513, 535, 564 N.W.2d 532, 547 (1997)). As the court further explained in *Phinney*, however, "'[t]he representation and its materiality proven, it must be shown that the plaintiff's knowledge was *so informatively complete* as to render the allegation of reliance quite as false as the representation itself.'" *Id.* (quoting *Sautter v. Ney*, 365 Mich. 360, 363, 112 N.W.2d 509 (1961) (emphasis added)).

Nevertheless, and although not raised by U.S. Bank, the Court is concerned about Plaintiff's "naked assertion" or "threadbare recital" that she "did rely" on U.S. Bank's

14

misrepresentations. (Compl. ¶ 23.) Plaintiff fails to indicate how she acted in reliance on U.S. Bank's statements to her detriment– in other words, what she did or did not do based on the misrepresentations. For this reason, the Court concludes that Plaintiff's misrepresentation claim (Count I) fails to state claim on which relief may be granted.

### E. Wrongful Foreclosure (Count V)

Plaintiff asserts that U.S. Bank wrongfully foreclosed on her home because she made all of the payments due on the mortgage loan. U.S. Bank seeks dismissal of this claim, arguing that because MSHDA holds the mortgage and has the ultimate authority to determine whether to institute foreclosure proceedings, Plaintiff must exhaust her administrative remedies prior to effectuating a "wrongful foreclosure" action in this Court.

To support its argument, U.S. Bank relies on Michigan Administrative Code Rule 125.111 which provides, in relevant part: "A person, firm, corporation, or public body or agency, aggrieved by a decision of the authority [MSHDA] or the executive director, may request in writing that the authority hold a hearing in accordance with Act No. 306 of the Public Acts of 1969, as amended, being SS24.201 to 24.315 of the Michigan Compiled Laws." U.S. Bank fails to convince this Court that this rule requires Plaintiff to seek a hearing before the MSHDA before pursuing her wrongful foreclosure claim against U.S. Bank. First, it is not evident from Plaintiff's Complaint that MSHDA made the decision to initiate foreclosure proceedings with respect to the property. Even if it did, however, there is no evidence that Plaintiff was informed of a decision by MSHDA such that

Plaintiff would know to pursue any available administrative remedies. Furthermore, U.S. Bank fails to cite and this Court found no decisions applying this rule to the authority's decision to foreclose on a loan it held.

Therefore, based on U.S. Bank's argument, the Court cannot conclude at this juncture that Plaintiff's wrongful foreclosure claim (Count V) fails to state a claim upon which relief may be granted.

### F.    Intentional Infliction of Emotional Distress (Count VI)

Plaintiff alleges that U.S. Bank's conduct with respect to her mortgage was intentional and constituted extreme and outrageous conduct that caused her emotional distress. (Compl. ¶¶ 47-48, 50.) To establish a Michigan common law claim of intentional infliction of emotional distress, a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Graham v. Ford*, 237 Mich.App. 670, 674, 604 N.W.2d 713 (1999); *see also Roberts v. Auto-Owners Insurance Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985). Liability under this theory requires that the conduct complained of "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Graham*, 237 Mich. App. at 674, 604 N.W.2d 713. This is a demanding standard: It is not sufficient to show that the defendant acted tortiously, intentionally, or even criminally. *Id*. The test has been described as whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim,

'Outrageous!'" *Roberts*, 422 Mich. at 603, 374 N.W.2d 905.

Plaintiff's intentional infliction of emotional distress claim, like all her claims, revolves around U.S. Bank's alleged misrepresentations regarding the status of her loan payments and a resulting foreclosure action. Plaintiff's allegations, under the standard set forth in *Graham* and *Roberts*, do not constitute "outrageous" conduct. Plaintiff's intentional infliction of emotional distress claim (Count VI) fails to state a claim on which relief may be granted.

### IV. Conclusion

For the reasons set forth above, the Court concludes that Plaintiff fails to state a claim upon which relief may granted in her counts alleging a violation of the FDCPA (Count III) and HAMP and EESA (Count IV), as well as misrepresentation (Count I) and intentional infliction of emotional distress (Count VI). The Court however cannot conclude at this time and for the reasons set forth by U.S. Bank that Plaintiff's RESPA (Count II) and wrongful foreclosure (Count V) claims are subject to Rule 12(b)(6) dismissal.

Accordingly,

**IT IS ORDERED**, that Defendant U.S. Bank's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

                 s/PATRICK J. DUGGAN
                 UNITED STATES DISTRICT JUDGE

Copies to:
Vanessa G. Fluker, Esq.
Edward C. Cutlip Jr., Esq.
Davidde A. Stella, Esq.