UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARILYN HOUSTON,

       Plaintiff,

v.
                                             Case No. 10-13780
                                             Honorable Patrick J. Duggan

U.S. BANK HOME MORTGAGE
WISCONSIN SERVICING, a wholly
owned subsidiary of U.S. Bank, N.A. and
GARY HEIDEL, Executive Director of
the Michigan State Housing Development
Authority,

       Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This action, which was removed from the Wayne County Circuit Court on September 22, 2010, arises from the foreclosure of real estate in the City of Detroit, owned by Plaintiff Marilyn Houston ("Plaintiff"). In a Complaint filed August 16, 2010, Plaintiff alleges that Defendant U.S. Bank Home Mortgage ("U.S. Bank")– improperly designated as U.S. Bank Home Mortgage Wisconsin Servicing ("U.S. Bank")– violated federal and state law when it claimed an incorrect arrearage and balance on a mortgage loan U.S. Bank serviced. Plaintiff filed an Amended Complaint on June 1, 2011, adding claims against Gary Heidel, Executive Director of the Michigan State Housing Development Authority ("MSHDA"). This Court previously dismissed some of the claims set forth in Plaintiff's Amended Complaint pursuant to a motion to dismiss filed

by U.S. Bank. Remaining are Plaintiff's claims alleging that U.S. Bank violated the federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-2617 (Count II), U.S. Bank wrongfully foreclosed Plaintiff's property (Count V), MSHDA breached the mortgage contract (Count VII), and MSHDA violated Plaintiff's Due Process Rights by failing to comply with 12 U.S.C. § 1715u and 24 C.F.R. § 203.501 (Count VIII).

Presently before the Court are Defendants' separate motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The motions have been fully briefed and, on October 12, 2011, this Court held a motion hearing.

## I.   Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the

"nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

**II.     Factual Background**

On August 14, 2001, Plaintiff obtained a loan from Flagstar Bank, FSB in the amount of $63,900 to purchase real property located at 8740 Westfield in Detroit, Michigan ("the property"). The loan was secured by a HUD/FHA insured mortgage on the property. On the same date, the mortgage was assigned to MSHDA.

On November 5, 2003, Plaintiff filed a voluntary Chapter 13 petition in the United States Bankruptcy Court for the Eastern District of Michigan. On March 3, 2004, the Bankruptcy Court confirmed the Chapter 13 plan. MSHDA filed two claims in the

Chapter 13 bankruptcy: a claim for the mortgage loan ("Claim 3") and a claim for $2,542.85 in prepetition arrearage on the mortgage loan ("Claim 4"). During the execution of the Chapter 13 plan, U.S. Bank notified Plaintiff that servicing of her loan had been transferred to Heartwell Mortgage Corporation and then to U.S. Bank.

The Chapter 13 Plan was administered by deducting the plan funds from Plaintiff's bi-weekly paycheck. With these funds, the Trustee paid the full amount of Claim 4 (the $2,542.85 arrearage). (Doc. 30 Ex. I.) The Trustee also made monthly payments to MSHDA, Heartwell, or U.S. Bank for the mortgage loan during the bankruptcy proceedings. (*Id.*)

Plaintiff's Chapter 13 Plan terminated on March 11, 2009. The Trustee made the last payment on Claim 3 (the mortgage loan) to U.S. Bank on March 4, 2009. (*Id.*) On March 24, 2009, the Trustee stopped making automatic deductions from Plaintiff's paycheck. (*Id.*)

On May 27, 2009, the Chapter 13 Trustee filed a "Notice of Completion of Plan Payment; and Notice to Creditors of Right to Object." (Doc. 5 Ex. G.) The notice indicates that Plaintiff made all payments to the Trustee as required by the confirmed Chapter 13 Plan and, as to "any secured claim that continues beyond the term of the plan," that "any pre-petition or post-petition defaults have been cured and the claim is in all respects current, with no escrow balance, late charges, costs or attorney fees owing." (*Id.*) With respect to secured debt obligations, the notice advises the debtor:

1. Immediately begin making the required payments on secured debt

>   obligations to avoid defaulting on those secured debt obligations.
>
> 2.  Continue to make required payments on secured debt obligations until those obligations are paid in full. If the Court determines that the Debtor is eligible for a Discharge, the Chapter 13 Discharge will not discharge the Debtor from any obligation on any continuing secured debt payments that come due after the date of the Debtor [sic] last payment under the plan.

(*Id.*)

On July 7, 2009, the Bankruptcy Court entered an Order of Discharge in Plaintiff's bankruptcy case. On July 31, 2009, the Trustee filed her "Final Report and Account" in the bankruptcy proceedings. (Am. Compl. Ex. 4.)

Plaintiff received a statement from U.S. Bank dated July 17, 2009, indicating that she owed $2,226.27 in past due amount(s) and $15.74 in late charges in addition to her monthly payment of $742.09. (Am. Compl. Ex. 7.) Plaintiff telephoned U.S. Bank to inquire about the alleged arrearage and the amount of the principal balance. (Doc. 33 Ex. 3 ¶ 6.) According to Plaintiff, U.S. Bank did not address the payment amount in dispute and insisted that Plaintiff owed the alleged amount. (*Id.*)

On August 19, 2009, Plaintiff sent a letter to U.S. Bank via certified mail regarding her loan. Plaintiff identifies herself and her loan number at the top of the letter and then writes:

> US Bank Home Mortgage is the servicer of my mortgage loan at the above address. I dispute the amount that is owed according to the Monthly Billing Statement and request that you send me information about the fees, costs and escrow accounting on my loan. This is a "qualified written request" pursuant to the Real Estate Settlement and Procedures Act (section 2605(e)).

5

(Am. Compl. Ex. 8.) In her letter, Plaintiff then requests "an itemization" of several things including her payment history, the amount of claimed arrears or delinquencies, and a copy of all bankruptcy payments and how the payments were applied to her account. (*Id.*) This Court previously ruled that Plaintiff's letter constituted a "qualified written request" ("QWR") as that term is defined in RESPA. (5/2/11 Op. and Order at 7-9.)

Although U.S. Bank received Plaintiff's correspondence, it failed to respond. Plaintiff made no further attempts to contact the bank. She also made no payments toward the mortgage loan balance after the bankruptcy proceedings concluded.

As a result of Plaintiff's failure to make her monthly mortgage payments, U.S. Bank attempted to contact her by telephone but her number had been disconnected. (Doc. 30 Ex. K.) On March 25, 2010, U.S. Bank sent a correspondence to Plaintiff via certified mail indicating that she was in default on her mortgage loan in the amount of $8,444.65. (Doc. 30 Ex. M.) The letter was returned unclaimed. (*Id.* Ex. K.) U.S. Bank sent a second letter to Plaintiff on March 25, 2010, stating *inter alia* that if she is unable to bring her account current, she should contact one of its representatives "to work out [a] repayment plan." (*Id.* Ex. M.) On April 20, 2010, U.S. Bank sent another letter to Plaintiff, informing her that it would commence foreclosure proceedings in five days unless the delinquency was cured. (*Id.* Ex. N.)

On June 3, 2010, U.S. Bank informed Plaintiff that it had retained counsel to commence foreclosure by advertisement proceedings on the property. (*Id.* Ex. O.) Thereafter, the following notices were provided to Plaintiff:

6

- •Notice was sent to Plaintiff on June 23, 2010 pursuant to Michigan Compiled Laws § 600.3205, providing (a) the reason for the default and the amount due and owing; (b) contact information for the mortgage holder, the mortgage servicer, or any agent designated by the holder or servicer; (c) a statement of the borrowers' rights under the statute; and (d) a list of housing counselors (Doc. 30 Ex. P);

- •Notice was published on several dates in the Detroit Legal News, alerting Plaintiff to her rights under § 600.3205 (*Id*. Doc. Q); and

- •Notice of the default, the amount due under the mortgage, and the date, time and location for the foreclosure sale scheduled for August 18, 2010 was posted on the front door of the property on July 27, 2010. (*Id*. Ex. R.)

U.S. Bank has no record of Plaintiff responding to its letters or notices. (*Id*. Ex. K.) Plaintiff presents no evidence to suggest that she contacted or attempted to contact U.S. Bank after her August 19, 2009 QWR.

Instead, Plaintiff initiated this lawsuit on August 16, 2010– two days prior to the scheduled sheriff's sale. She, however, did not file a motion seeking a stay of the foreclosure proceedings. On August 18, 2010, the property was sold at the foreclosure sale to MSHDA. Plaintiff failed to redeem the property before the redemption period expired on February 18, 2011.

### III. Applicable Law and Analysis

#### A. Real Estate Settlement Procedures Act ("RESPA")

Plaintiff alleges that U.S. Bank violated RESPA, specifically 12 U.S.C. § 2605(e), by failing to respond to her August 19, 2009 QWR. Section 2605(e) imposes the following duties on a loan servicer:

> (1)(A) If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
> . . .
> (2) Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
> (I) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

>> (C) after conducting an investigation, provide the borrower
> with a written explanation or clarification that includes--
> (I) information requested by the borrower or an explanation of
> why the information requested is unavailable or cannot be
> obtained by the servicer; and
> (ii) the name and telephone number of an individual employed
> by, or the office or department of, the servicer who can
> provide assistance to the borrower.

12 U.S.C. § 2605(e). In its summary judgment motion, U.S. Bank does not challenge Plaintiff's ability to show that it failed to comply with the above requirements. Instead, U.S. Bank argues that it is entitled to summary judgment because Plaintiff cannot show that she suffered damages as a result of its failure to respond to her QWR.

RESPA authorizes "actual damages to the borrower *as a result of* the failure [to comply with the statute]." 12 U.S.C. § 2605(f)(1)(A) (emphasis added). Thus, a plaintiff asserting a RESPA violation "must show that the losses alleged are causally related to the violation." *Soriano v. Countrywide Home Loans, Inc.*, No. 09-02415, 2011 WL 1362077, at *6 (N.D. Cal. April 11, 2011) (unpublished). Plaintiff alleges in her Amended Complaint that, as a result of U.S. Bank's RESPA violation, she "has been subjected to illegal foreclosure based on an erroneous debt, the attempted wrongful sale of her property, along with financial damages and emotional distress." (Am. Compl. ¶ 33.) In her prayer for relief, Plaintiff seeks compensatory, exemplary, and/or punitive damages, to set aside the foreclosure and sheriff's sale of the property, and whatever additional damages and equitable relief this Court finds proper. (Am. Compl.)

The term "actual damages" under RESPA does not include equitable relief, such as

9

the setting aside of a sheriff's sale or otherwise undoing the foreclosure.[1]  *See, e.g., Serrano v. World Savings Bank, FSB*, No. 11-00105, 2011 WL 1668631, at *3 (E.D. Cal. Nov. 15, 2010) (unpublished); *Ryan v. BAC Home Loans Servicing, LP*, No. 10-2928, 2010 WL 4723732, at *3 (E.D. Cal. Nov. 15, 2010) (unpublished); *Watkins v. Beneficial HSBC Mortg.*, No. 10-1999, 2010 WL 4318898, at 3 n.8 (N.D. Ga. Sept. 2, 2010) (unpublished); *Hoover v. Wisecarver*, No. 03-799JS, 2006 WL 2583735, at *3-4 (S.D. Miss. Sept. 7, 2006) (unpublished).  RESPA also does not authorize punitive damages. *See, e.g., Carr v. Mid-Atl. Fin. Servs., Inc.*, No. 10-00477, 2010 WL 3368260, at *14 (N.D. Ga. July 27, 2010) (unpublished) (citing *Sarsfield v. Citimortgage, Inc.*, 667 F. Supp. 2d 461, 470 (M.D. Pa. Oct. 21, 2009)); *Pelayo v. Home Capital Funding*, 08-2030, 2009 WL 1459419, at *9 (S.D. Cal. May 22, 2009) (unpublished).  Courts are split on whether RESPA allows for the recovery of emotional distress damages.  *Compare Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1166-67 (M.D. Ala.1999) (citing cases holding that emotional distress damages are available under RESPA) *with Katz v. Dime Savings Bank, FSB*, 992 F. Supp. 250, 255-56 (W.D.N.Y. 1997) (concluding that non-pecuniary damages are  not available under RESPA).

This Court finds it unnecessary to decide whether non-pecuniary damages are

---

[1]In any event, as discussed *infra*, Plaintiff lacks standing to challenge or set aside the foreclosure, now that the redemption period has expired.  *Moriarty v. BNC Mortgage, Inc.*, No. 10-13860, 2010 WL 5173830, at *2 (E.D. Mich. Dec. 15, 2010) (citing *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187, 4 N.W.2d 514 (1942); see also Mich. Comp. Laws § 600.3236.

recoverable under RESPA because, as U.S. Bank argues, Plaintiff fails to show a causal relationship between U.S. Bank's RESPA violation and her claimed damages. While Plaintiff asserts that she suffered damages as a result of the "wrongful" foreclosure, she presents no evidence suggesting that U.S. Bank's failure to respond to her August 19, 2009 QWR caused the foreclosure.[2] Even if there was a dispute or actual error as to the arrearage appearing on the July 17, 2009 statement that U.S. Bank sent to Plaintiff, this dispute did not justify Plaintiff's failure to continue making her monthly mortgage payments. Plaintiff did not make a single monthly payment toward her mortgage loan after being informed by the Trustee that she was required to begin doing so and after the bankruptcy proceedings terminated and monthly deductions were no longer being made from her paycheck. Further, she made no contact with U.S. Bank after her August 19 correspondence. In fact she ignored U.S. Bank's subsequent attempts to communicate with her regarding her default.

Because Plaintiff's failure to make any payments towards her mortgage loan after at least July 2009, rather than U.S. Bank's RESPA violation, appears to be the cause of the foreclosure, U.S. Bank is entitled to summary judgment with respect to her RESPA claim. *See Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1098 (S.D. Cal. 2009) (finding that the plaintiff's loss of property appeared to have been caused by his

---

[2]Plaintiff presents no evidence suggesting that the foreclosure was "wrongful" or "based upon an improper and illegal default." There is no dispute that Plaintiff made *no* payments on her mortgage after she was released from bankruptcy.

default and not the alleged RESPA violations); *Lee v. Equifirst Corp.*, No. 3:10-809, 2010 WL 4320714, at *9 (M.D. Tenn. Oct. 26, 2010) (unpublished) ("It is clear that the foreclosure was caused by the plaintiff's inability to pay the amount she owed; knowledge of why certain payments were applied in certain ways [the information she sought in her unanswered QWR request] had no effect on the her ability to make loan payments"); *Lawther v. Onewest Bank*, No. 10-0054, 2010 WL 4936797, at *7 (N.D. Cal. Nov. 30, 2010) (unpublished) (finding no evidence showing "how the QWR failure itself is casually connected to the claimed distress of Lawther or his family.")

### B. Wrongful Foreclosure[3]

In her Amended Complaint, Plaintiff asserts that U.S. Bank's foreclosure of the property was wrongful. Specifically, she alleges:

> 46. As a proximate result of the negligent and reckless conduct of Defendant, US Bank Home Mortgage, Plaintiff's credit has been impaired, and she has been threatened with the imminent loss of her property despite the fact that she made all payments in accordance with the bankruptcy terms.
>
> 47. Defendant does not have a recorded interest in the mortgage loan, making any foreclosure proceedings void *ab initio*.

(Am. Compl.)

---

[3]U.S. Bank does not appear to recognize Plaintiff's wrongful foreclosure claim as remaining viable following this Court's decision on its motion to dismiss, as it does not expressly address the claim in its summary judgment motion. The Court did not grant U.S. Bank's 12(b)(6) motion with respect to this claim, however, and Plaintiff included this claim against U.S. Bank in her subsequently filed Amended Complaint. Nevertheless, some of the arguments U.S. Bank raises in support of summary judgment as to Plaintiff's RESPA claim apply equally to her wrongful foreclosure claim.

Under Michigan law, once the redemption period following foreclosure of property has expired, the former owner's rights in and title to the property are extinguished. *Moriarty v. BNC Mortg., Inc.*, No. 10-13860, 2010 WL 5173830, at *2 (E.D. Mich. Dec. 15, 2010) (unpublished) (citing *Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 187, 4 N.W.2d 514 (1942)); *see also* Mich. Comp. Laws § 600.3236. Once the redemption period expires, the former owner loses standing to assert claims with respect to the property. *Overton v. Mortg. Electronic Registration Sys., Inc.*, No. 284950, 2009 WL 1507342, at * 1 (Mich. Ct. App. May 28, 2009) (unpublished); see also *Kama v. Wells Fargo Bank*, No. 10-10514, 2010 WL 4386974, at *2 (E.D. Mich. Oct. 29, 2010) (unpublished); *Smith v. Wells Fargo Home Mortg., Inc.*, No. 09-13988 (E.D. Mich. Aug. 16, 2010) (unpublished). The only exception is where the plaintiff makes a clear showing of fraud, accident, or mistake in the foreclosure proceedings themselves. *Freeman v. Wozniak*, 241 Mich. App. 633, 637-78, 617 N.W.2d 46 (2000); *Ellison v. Wells Fargo Home Mortg., Inc.*, 09-14175, 2010 WL 3998091, at *4 (Oct. 12, 2010) (unpublished) (citing cases). In the present case, Plaintiff does not show that there was fraud, accident, or mistake related to the foreclosure proceedings specifically.

Although Plaintiff repeatedly asserts that U.S. Bank improperly foreclosed on the property, she presents no evidence to support this claim and simply alleges that U.S. Bank did not have an interest in the indebtedness.[4] Under Michigan law, however, the ability to

---

[4]As stated earlier, even if Plaintiff is correct that she did not owe the arrearage
(continued...)

foreclose by advertisement extends beyond the owner of the indebtedness. Michigan's foreclosure by advertisement statute authorizes foreclosure by "either the owner of the indebtedness *or* of an interest in the indebtedness secured by the mortgage *or* the servicing agent of the mortgage." Mich. Comp. Laws § 600.3204(1)(d) (emphasis added); *see also Carl v. BAC Home Loans Servicing, LP*, No. 11-11255, 2011 WL 3203086, at *5 (E.D. Mich. July 27, 2011) (unpublished). U.S. Bank was the servicing agent for Plaintiff's mortgage loan when foreclosure proceedings were initiated.

U.S. Bank therefore is entitled to summary judgment with respect to Plaintiff's wrongful foreclosure claim as well.

### C. Violation of Due Process Pursuant to 42 U.S.C. § 1983

Plaintiff alleges that MSHDA violated her rights to due process by failing to comply with certain federal statutory guidelines, specifically those set forth in 12 U.S.C. § 1715u of the National Housing Act ("NHA"). (Am. Compl. ¶ 63.) Section 1715u of the NHA requires mortgagees to "engage in loss mitigation actions for the purpose of providing an alternative to foreclosure . . ." 12 U.S.C. § 1715u(a). Heidel seeks summary judgment with respect to this claim, arguing that there is no private right of action to enforce § 1715u.

---

[4](...continued)
contained in U.S. Bank's monthly mortgage statement dated July 17, 2009, there is no dispute that she never made any monthly payments after the bankruptcy proceedings terminated. She undisputedly, therefore, was in default and the mortgage was subject to foreclosure. (*See* Am. Compl. Ex. 3 ¶ 9.)

Courts have found that § 1715u and its regulations do not create a private right of action for a mortgagor.  *See, e.g.*, *In re Miller*, 124 F. App'x 152, 155 (5th Cir. 2005); *Wells Fargo Bank, N.A. v. Favino*, 10-571, 2011 WL 1256771, at *12 (N.D. Ohio Mar. 31, 2011) (unpublished) (citing *Mitchell v. Chase Home Fin. LLC*, No. 3:06–CV2099–K, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008)); *In re Shirk*, 437 B.R. 592, 607-08 (Bankr. S.D. Ohio 2010); *see also Moses v. Banco Mortg. Co.*, 778 F.2d 267, 272 n.2 (5th Cir. 1985) (citing cases finding no private right of action in the NHA or its regulations generally).  Where a federal statute does not confer a private right of action, § 1983 cannot be used to broaden the rights conferred by the statute.  In other words, § 1983 does not provide a vehicle to redress violations of a statute where Congress has foreclosed private enforcement of the statute in the enactment itself.  *See Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Assoc.*, 453 U.S. 1, 19, 101 S. Ct. 2615, 2626  (1981).  Plaintiff does not take issue with this authority.

Rather, Plaintiff argues in response to Heidel's summary judgment motion that she is not seeking to create a private cause of action under the NHA, but is seeking to enforce a duty established under the mortgage contract.  This claim, however, is indistinguishable from her breach of contract claim.  As Plaintiff cannot assert a § 1983 claim against Heidel for violations of the NHA and its implementing actions, and appears to concede as much, the Court concludes that he is entitled to summary judgment with respect to

Plaintiff's due process claim.[5]

### D. Breach of Contract

As suggested above, Plaintiff's breach of contract claim is premised on MSHDA's alleged failure to comply with § 1715u of the NHA and its implementing regulations, specifically a purported duty to engage in loss mitigation. Plaintiff asserts that MSHDA's failure is a breach of the terms of the mortgage contract, requiring MSHDA to comply with applicable federal statutes and regulations. (*See* Am. Compl. Ex. 3 ¶ 9.) In response to Heidel's motion for summary judgment, Plaintiff further alleges that MSHDA breached an implied covenant of good faith.

Heidel contends that he is entitled to summary judgment because, under Michigan law, Plaintiff cannot premise a breach of contract claim on a preexisting statutory duty. The Michigan courts have held that, under the preexisting duty rule, a breach of contract claim cannot be premised on an obligation that the defendant already had a duty under the law to perform. *See Lufthansa Cargo A.G. v. Cnty. of Wayne*, No. 01-74579, 2002 WL 31008373, at *4 (E.D. Mich. Aug. 16, 2002) (unpublished) (citing *Gen'l Aviation, Inc. v. Capital Region Airport Auth.*, 224 Mich. App. 710, 714-15, 569 N.W.2d 883 (1997)), *aff'd* 142 F. App'x 265 (6th Cir. 2004); *see also Romero v. Buhimschi*, 396 F. App'x 224, 233-34 (6th Cir. 2010). Plaintiff fails to respond to this argument and this Court

---

[5]A claim under § 1983 cannot be premised on an alleged breach of contract simply because a state actor is one of the contracting parties. *See Ramsey v. Bd. of Educ.*, 844 F.2d 1268, 1272-73 (6th Cir. 1998).

concludes that the rule precludes Plaintiff from asserting a breach of contract claim based on MSHDA's failure to comply with a preexisting statutory duty.

With respect to Plaintiff's argument in her response brief that MSHDA breached an implied covenant of good faith and fair dealing, Michigan does not recognize such a cause of action where the contract does not make the manner of performance discretionary. *See, e.g., Coyer v. HSBC Mortg. Servs.*, No. 10–14339, 2011 WL 4502087, at *5 (E.D. Mich. Sept. 28, 2011) (unpublished) (citing *Fodale v. Waste Mgmt. of Michigan*, 271 Mich. App. 11, 35, 718 N.W.2d 827 (2006) (citing *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 476, 666 N.W.2d 271 (2003)); *O'Brien v. BAC Home Loan Servicing, LP*, No. 10–15136, 2011 WL 1193659, at *2 (E.D. Mich. Mar. 28, 2011) (unpublished); *Sparks v. Fed. Nat'l Mortg. Ass'n*, No. 10–13241, 2011 WL 1118719, at *5 (E.D. Mich. Mar. 24, 2011) (unpublished).

In short, Heidel is entitled to summary judgment with respect to Plaintiff's breach of contract claim.

## IV. Conclusion

For the reasons set forth above, the Court concludes that Defendants are entitled to summary judgment with respect to Plaintiff's RESPA violation claim against U.S. Bank (Count II), wrongful foreclosure claim against U.S. Bank (Count V), breach of contract claim against Heidel (Count VII), and due process claim against Heidel (Count VIII). The Court previously dismissed the remaining claims in Plaintiff's Amended Complaint in its May 2, 2011 opinion and order granting in part U.S. Bank's motion to dismiss.

Accordingly,

**IT IS ORDERED**, that Defendant U.S. Bank's motion for summary judgment is **GRANTED**;

**IT IS FURTHER ORDERED**, that Defendant Gary Heidel's motion for summary judgment is **GRANTED**.

Date: October 14, 2011              s/PATRICK J. DUGGAN
                                    UNITED STATES DISTRICT JUDGE

Copies to:
Vanessa G. Fluker, Esq.
Edward C. Cutlip Jr., Esq.
Davidde A. Stella, Esq.